United States District Court
Southern District of Texas
**ENTERED**
May 30, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| NEIL GILMOUR III | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:16–CV–00266 |
| | § | |
| INTERTEK USA, INC., *et al.* | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Court are Defendants Intertek USA, Inc. and Intertek USA, Inc. Health Benefit Plan's (collectively "Intertek Defendants") Motion for Summary Judgment (Dkt. 43) and Motion to Strike (Dkt. 46). The Court has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 54).

Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court RECOMMENDS that Intertek Defendants' Motion for Summary Judgment (Dkt. 43) be GRANTED and Intertek Defendants' Motion to Strike (Dkt. 46) be DENIED as moot.

### I. BACKGROUND

This dispute involves claims arising from an alleged underpayment made by Intertek USA, Inc. Health Benefit Plan (the "Plan") to Victory Medical Center Southcross, LP f/k/a Innova Hospital San Antonio, LP ("VMCS") for treatment VMCS provided Patient WB ("Patient") over a 15-day period in 2012. At that time, Patient was

a beneficiary under the Plan, and VMCS was considered an out-of-network healthcare provider because it had no contractual relationship with the Plan.

VMCS billed Patient $1,635,810.95 for the treatment it provided over the 15-day period. Patient's bills from VMCS were submitted to the Plan, and the Plan paid only $319,264.32 of the billed charges.

In August 2016, Patient executed an assignment of benefits form in favor of VMCS, which purportedly had the effect of transferring to VMCS all of Patient's rights and claims under the Employee Retirements Income Security Act ("ERISA") and state law.[1]

This suit was filed in September 2016 by Plaintiff Neil Gilmour, III, acting solely in his capacity as Trustee of the Victory Medical Center Southcross Unsecured Creditors' Grantor Trust ("Gilmour"), seeking to recover the difference between the amount VMCS billed for the treatment of Patient and the amount actually paid by the Plan ($1,316,543.63), along with other penalties and damages available under ERISA and state law. Specifically, Gilmour asserts the following ERISA claims against Intertek Defendants: recovery of benefits under ERISA Section 502(a)(1)(B); breach of fiduciary duties under ERISA Section 502(a)(2); equitable relief under ERISA Section 502(a)(3); failure to provide Plan documents under ERISA Section 502(c)(1)(B); and attorneys' fees under ERISA Section 502(g)(1). Gilmour also asserts the following state law claims:

---

[1] At oral argument, the parties alluded to the existence of an assignment of benefits form executed in 2012. To the extent such form exists, neither party has offered it in support of their positions on summary judgment.

negligent misrepresentation, promissory estoppel, and violations of Chapter 541 and 542 of the Texas Insurance Code.

Intertek Defendants have moved for summary judgment on all of Gilmour's claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks and citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56 burden, the nonmovant must identify "significant probative evidence that there exists a genuine issue of material fact." *Atkins v. Szymczak*, 710 F. App'x 223, 224 (5th Cir. 2018) (internal quotation marks and citation omitted). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a

scintilla of evidence." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (internal quotation marks and citation omitted).  "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (quotation marks and citation omitted).

### III. EVIDENTIARY OBJECTIONS

Before considering the merits of the Motion for Summary Judgment, the Court addresses Intertek Defendants' Motion to Strike certain portions of Gilmour's summary judgment evidence (Dkt. 46), as well as Gilmour's objections to Intertek Defendants' summary judgment evidence (Dkt. 45 at 9–10).

**Intertek Defendants' Objections:**  Intertek Defendants object and move to strike certain evidence submitted by Gilmour in support of his summary judgment response, including certain portions of Kelly Russell's affidavit, Randy Gabriel's sworn declaration, and certain documents attached to the affidavit and declaration.  Intertek Defendants contend that many of the statements in the affidavit and declaration are inadmissible hearsay, not based on personal knowledge, or improper conclusions. Intertek Defendants further object that certain documents attached to the affidavit are incomplete or otherwise incorrectly described by the authenticating affidavit or declaration.

The Court has reviewed the challenged evidence and determines that, even when it is considered, the evidence does not alter the Court's findings and conclusions with respect to the pending summary judgment motion.  Accordingly, Intertek Defendants'

objections are overruled as moot, and the Motion to Strike (Dkt. 46) is DENIED. *See In re Moye*, No. CV H-10-956, 2010 WL 11519301, at *9 (S.D. Tex. Dec. 23, 2010), *aff'd*, 486 F. App'x 485 (5th Cir. 2012) (denying as moot an objection to summary judgment evidence where sustaining the objection "would not change the Court's ultimate decision"); *Jones v. United Parcel Serv., Inc.*, No. 3:06–CV–1535–L, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008), *aff'd*, 307 F. App'x 864 (5th Cir. 2009) (denying as moot an objection to summary judgment evidence where sustaining the objection would not change the outcome).

**Gilmour's Objections:** Gilmour advances two cursory objections against Intertek Defendants' summary judgment evidence. First, Gilmour contends that Intertek Defendants have produced conclusory statements that are insufficient to support their motion for summary judgment. Gilmour does not cite any rule of evidence or other legal authority to support this contention. Gilmour also does not indicate which specific statements he finds conclusory. The Court, therefore, assumes Gilmour is arguing that the entire affidavit of Heather Schuerman (Dkt. 44 at 3–5), the sole affidavit offered in support of the Motion for Summary Judgment, is conclusory. This is fatal to Gilmour's objection.

"Federal Rule of Evidence 103(a)(1)(B) requires the objecting party to make specific objections and state the specific grounds on which each piece of evidence should be stricken. A loosely formulated and imprecise objection will not preserve error; thus, a trial court must be fully appraised of the grounds of an objection." *Martinez v. Ford Motor Co.*, No. SA:14-CV-376-DAE, 2014 WL 6680521, at *2 (W.D. Tex. Nov. 25,

2014) (internal quotation marks and citations omitted). *See also Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 722 (N.D. Tex. 2006) ("The court is not required to review large quanta of evidence to ferret out inadmissible statements. Rather, Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken. Objections lacking specificity do not satisfy the requirements of Rule 103.") (citations omitted).

Because Gilmour has offered only "a broad statement that ... [the] affidavit is conclusory," the Court "finds that [his] objection is not specific enough to pass muster under Federal Rule of Evidence 103(a)(1)(B)." *Martinez*, 2014 WL 6680521, at *2 (internal quotation marks omitted). Thus, Gilmour's objection on the basis of purported conclusory statements is OVERRULED.

Next, Gilmour contends that "Defendants have failed to properly authenticate the exhibits attached to the Affidavit of Heather Schuerman, which exhibits are inadmissible, cannot be considered as summary judgment evidence, and should be stricken." (Dkt. 45 at 9–10). As pointed out by Intertek Defendants, Gilmour has not offered any explanation why he believes that Intertek Defendants' exhibits are not properly authenticated or otherwise inadmissible, nor has he cited any case law or Federal Rule of Evidence demonstrating that this evidence "cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). Because "[i]t is not the Court's responsibility to comb through the record to determine the basis for [his] cursory objections or to make arguments on his behalf," Gilmour's objection must fail. *Hoffman*

*v. Bailey*, 257 F. Supp. 3d 801, 824 (E.D. La. 2017).  As such, Gilmour's objection to Intertek Defendants' exhibits based on insufficient authentication is OVERRULED.

## IV.  DISCUSSION

### A.   ERISA CLAIMS

Gilmour asserts claims against Intertek Defendants under ERISA Sections 502(a)(1)(B), 502(a)(2), 502(a)(3), 502(c)(1)(B), and 502(g)(1).  *See* 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), 1132(a)(3), 1132(c)(1)(B), and 1132(g)(1).  Intertek Defendants argue that Gilmour lacks standing to sue under these sections of ERISA because the Plan prohibits the assignment of benefits upon which his standing is ostensibly based.  Gilmour disagrees, arguing that any anti-assignment language in the Plan is unenforceable against him and, alternatively, Intertek Defendants have waived the right to rely upon such anti-assignment language.

### 1.   Applicable Law

ERISA contemplates two types of employee benefit plans—employee welfare benefit plans and employee pension plans.  *See* 29 U.S.C. § 1002(1), (3).  An "employee welfare benefit plan" or "welfare plan" is "a plan, fund, or program [which] was established for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care benefits."  *Id.* at § 1002(1).  The ERISA plan at issue in this case is a welfare benefit plan.  The statute also provides for enforcement mechanisms, including causes of action to recover

benefits due under the terms of a plan;[2] for breaches of fiduciary duty;[3] to enforce rights under a plan, equitably or otherwise;[4] to recover penalties for a plan administrator's failure to provide documents;[5] and for recovery of attorney's fees.[6] "[S]tanding to bring such claims, however, is limited to participants, beneficiaries, the Secretary [of Labor], or fiduciaries." *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891 (5th Cir. 2003) (citation omitted).

Nevertheless, the Fifth Circuit, "like many of [its] sister Circuits, recognizes derivative standing which permits suits in the context of ERISA-governed employee welfare benefit plans, to be brought by certain non-enumerated parties." *Id.* at 891 (collecting cases). Pertinent here, "[h]ealthcare providers do not have standing to sue in their own right to collect benefits under an ERISA plan, but they may obtain assignments from their patients and thereby have derivative standing to bring ERISA actions to recover benefits." *Mem'l Hermann Health Sys. v. Pennwell Corp. Med. & Vision Plan*, No. CV H-17-2364, 2017 WL 6561165, at *5 (S.D. Tex. Dec. 22, 2017) (citations omitted). Although ERISA does not prohibit a plan participant or beneficiary from assigning benefits to his healthcare provider,[7] "the Fifth Circuit has … recognized that

---

[2] ERISA Section 502(a)(1)(B).

[3] ERISA Section 502(a)(2).

[4] ERISA Section 502(a)(3).

[5] ERISA Section 502(c)(1)(B).

[6] ERISA Section 502(g)(1).

[7] *See Tango Transp.*, 322 F.3d at 893 ("In holding that ERISA does not prohibit the assignment of welfare benefits to a hospital, this Court noted that there is no language in the statute which even remotely suggests that such assignments are proscribed or ought in any way be limited.") (internal quotation marks and citation omitted).

anti-assignment provisions [contained in employee welfare benefit plans] are generally effective and will operate to render a purported assignment invalid." *Sleep Lab at W. Houston v. Texas Children's Hosp.*, No. CIV.A. H-1S-01S1, 2015 WL 3507894, at *4 (S.D. Tex. June 2, 2015) (citing *LeTourneau Lifelike Orthotics & Prosthetics. Inc. v. Wal–Mart Stores. Inc.*, 298 F.3d 348, 352–53 (5th Cir. 2002)).

"[D]istrict court[s] … interpret … assignment form[s] in accordance with Texas contract law principles and [employee welfare benefit plans] under ERISA principles." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005).

### 2.    The Plan's Anti-Assignment Language

The Plan contains the following relevant anti-assignment language:

**Assignment**

You authorize the Claims Administrator, on behalf of the Employer, to make payments directly to Providers for Covered Services.  The Claims Administrator also reserves the right to make payments directly to You.  Payments may also be made to, and notice regarding the receipt and/or adjudication of claims, an Alternate Recipient, or that person's custodial parent or designated representative.  Any payments made by the Claims Administrator will discharge the Employer's obligation to pay for Covered Services.  **You cannot assign Your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support Order" as defined by ERISA or any applicable Federal law.**

Once a Provider performs a Covered Service, the Claims Administrator will not honor a request to withhold payment of the claims submitted.

**The coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan, except as provided above.**

9

(Dkt. 44 at 106 and 201) (emphasis added).

### 3.    Intertek Defendants' Position

Intertek Defendants contend that the text bolded above constitutes the Plan's anti-assignment language, and this language renders null the purported assignment of benefits executed between Patient and VMCS because "based on the express terms of the Plan, the Patient did not have the right to assign any rights or obligations with respect to the Plan to anyone." (Dkt. 43 at 13). Intertek Defendants specifically make two arguments.

First, Intertek Defendants argue that the Plan twice states that assignments are not allowed, except under limited circumstances not alleged or applicable here. With respect to the exceptions identified in the Plan, Intertek Defendants rightly note that the First Amended Complaint does not even contain an allegation that the assignment from Patient to VMCS was required by a "'Qualified Medical Child Support Order' ... or any applicable Federal law." Moreover, Intertek Defendants also submitted summary judgment evidence that Patient did not request or receive written consent from the Plan to assign his benefits to VMCS. Although Defendants do not discuss or argue the issue of written consent in terms of Gilmour's allegations, the Court has reviewed the First Amended Complaint and determined that Gilmour has not alleged that Patient received written consent from the Plan.

Intertek Defendants next argue that the Plan "clearly reserves *to the Claims Administrator* the decision whether to make payments directly to medical providers or to the Plan participant/beneficiary"; and thus, such language "is wholly inconsistent with

10

[Patient] being allowed to assign his ... right to payment to [VMCS]." (Dkt. 43 at 16). Defendants conclude by stating that the Plan's plain language "can only lead to **one** conclusion—the purported 'assignment(s)' under which Plaintiff claims to be suing are invalid and unenforceable." (*Id.* at 16–17).

### 4.   Gilmour's Position

In response, Gilmour does not contend that one of the exceptions discussed by Intertek Defendants applies in this case—that is, that the Plan gave Patient written consent to assign his rights or that this case involves a Qualified Medical Child Support Order or any other applicable federal law.   Gilmour also does not argue that the Plan's anti-assignment language is totally unenforceable.    Instead, Gilmour advances two arguments: (1) the anti-assignment clause is unenforceable against healthcare providers, and (2) Intertek Defendants have waived their right to rely upon the anti-assignment language.

With respect to his first argument, Gilmour contends that the Plan's relevant language actually accomplishes two related objectives: it "requires assignment of payment to the Provider once the Provider performs a Covered Service"; and it prohibits the assignment of benefits to "third-party assignees who are not healthcare providers." (Dkt. 45 at 15–16).  Based on these objectives, Gilmour argues that in context the Plan's anti-assignment language is substantially similar to that considered by the Fifth Circuit in *Hermann Hospital v. MEBA Medical & Benefits Plan*, 959 F.2d 569 (5th Cir. 1992) and *Abilene Regional Medical Center v. United Industry Workers Health & Benefits Plan*, No. 06-10151, 2007 WL 715247 (5th Cir. Mar. 6, 2007); and consequently, the same

11

result should follow—that is, the Court should find the anti-assignment language unenforceable against him, as trustee of a health care provider, VMCS.  Also, based on his interpretation that the Plan requires the assignment of payments to healthcare providers, Gilmour contends that the Plan's anti-assignment language is not meant to prohibit assignments by Plan members to healthcare providers—and again, the Court should find the anti-assignment language unenforceable against him, as trustee of a health care provider, VMCS.

As to his second argument, Gilmour contends that Intertek Defendants' waiver was accomplished through their course of conduct, which included: directly paying VMCS a portion of its submitted bill, corresponding with VMCS regarding the medical services provided to Patient, engaging in discussion with VMCS about Patient's coverage under the Plan, allowing VMCS to directly submit claim forms, and engaging with VMCS in the appeals process. (Dkt. 45 at 18–19).

5.    **Discussion**

i.    **Is the Plan's anti-assignment language enforceable against health care providers?**

The Plan's anti-assignment language plainly states that a beneficiary of the Plan "cannot assign [his] right to receive payment to anyone else, except as required by" circumstances not present here, and "[t]he coverage and any benefits under the Plan are not assignable ... without the written consent of the Plan ...." (Dkt. 44 at 106 and 201). Contrary to Gilmour's first argument, the Court's construction of the Plan's anti-assignment language is not guided by the decisions in *Hermann* and *Abilene.*

In *Hermann*, the Fifth Circuit considered an anti-assignment clause that provided:

> No employee, dependent or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment hereunder, and any such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims.

*Hermann*, 959 F.2d at 574. The Fifth Circuit explained that the language was similar to spendthrift provisions in trusts, and held that the anti-assignment clause was unenforceable against the hospital because the clause applied "only to unrelated, third-party assignees—other than the health care provider of assigned benefits—such as creditors who might attempt to obtain voluntary assignments to cover debts having no nexus with the Plan or its benefits, or even involuntary alienations such as attempting to garnish payments for plan benefits." *Id.* at 575.

Similarly, in *Abilene*, the Fifth Circuit considered an anti-assignment clause that provided:

> No employee, or designated beneficiary, or estate of an Employee shall have the right to assign any benefits to which he, she or it may be entitled hereunder and any such assignment shall be void as to the Plan; no benefit shall be subject to attachment or other legal process for or against an employee, designated beneficiary or estate.

*Abilene*, 2007 WL 715247, at *4. The Fifth Circuit found that "the anti-assignment provision is unenforceable against health care providers because it contains spendthrift language similar to the anti-assignment clause in *Hermann* ...." *Id.*

The anti-assignment language contained in the Plan, however, does not in any way resemble the anti-assignment clauses at issue in *Hermann* and *Abilene*. What is more, Gilmour has not offered any argument or explanation to assist the Court in uncovering

13

any meaningful similarity between the Plan's anti-assignment language and the spendthrift trust type language considered in *Hermann* and *Abilene*. In other words, Gilmour has not offered any basis for the Court to find that Plan's anti-assignment language was meant to apply only to third-party creditors other than healthcare providers, as was found by the Fifth Circuit in *Hermann* and *Abilene*. Thus, Gilmour's reliance on the holdings in *Hermann* and *Abilene* is misplaced.

The Court's analysis is, therefore, guided by the Fifth Circuit's case law, which "affirms the well-settled principle that Congress did not intend that ERISA circumscribe employers' control over the content of benefit plans they offered to their employees as well as Congress's intent that employers remain free to create, modify and terminate the terms and conditions of employee benefits plans without governmental interference." *LeTourneau*, 298 F.3d at 352 (internal quotation marks and citation omitted). With this guiding principle in mind, the Court must apply the plain meaning of the Plan's anti-assignment language. *See id.* ("[a]pplying universally recognized canons of contract interpretation to the plain wording of the ... anti-assignment clause").

Here, the Plan's anti-assignment language plainly states that a beneficiary cannot assign his right to receive payment to anyone without the written consent of the Plan, except as required by a Qualified Medical Child Support Order or any applicable federal law. Gilmour does not contend that a Qualified Medical Child Support Order or other applicable federal law required the assignment between Patient and VMCS. Applying universally recognized canons of contract interpretation to the plain wording of the Plan's

14

anti-assignment language, the Court concludes that any purported assignment of benefits from Patient to VMCS is void because the Plan did not offer its written consent.

To be clear, this determination is not affected by Gilmour's suggestion that the Plan actually requires that direct payments be made to healthcare providers for covered services. This is so because the Plan simply does not create an obligation to directly pay a provider. Rather, the Plan states that its Claim Administrator is "authorized," or "endowed with authority" to make direct payments to a healthcare provider—indeed, the Plan makes clear that the claims administrator maintained discretion to pay any number of persons or entities directly, including Patient. *See Authorized*, MERRIAM–WEBSTER ONLINE, https://www.merriamwebster.com/dictionary/authorized (last visited May 29, 2018). Plainly stated, the fact that the Plan authorized or "reserved … the right to make direct payments to healthcare providers does not suggest that the Plan members also have the right to unilaterally assign rights to healthcare providers." *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 355 (S.D.N.Y. 2013).

### ii.   Have Intertek Defendants waived their right to enforce the Plan's anti-assignment language?

Fifth Circuit case law distinguishes estoppel from waiver, and "defines waiver as 'a voluntary or intentional relinquishment of a known right.'" *High v. E–Systems Inc.*, 459 F.3d 573, 581 (5th Cir. 2006) (quoting *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991)). In the context of this case, Gilmour must put forth sufficient evidence to support his claim that Intertek Defendants voluntarily and knowingly relinquished their right to rely on the Plan's anti-assignment language through their

course of conduct. For this to be the case, Gilmour must point to conduct taken by Intertek Defendants after they became aware of the purported assignment between VMCS and Patient—that is, conduct capable of showing that Intertek Defendants voluntarily and intentionally relinquished their anti-assignment rights.

As mentioned above, the purported assignment between VMCS and Patient was executed in August 2016. The August 2016 assignment of benefits is the only such form discussed in Gilmour's summary judgment response and evidence. Based on the summary judgment evidence submitted by Gilmour (the affidavit of Kelly Russell), most of Intertek Defendants' conduct purportedly constituting waiver occurred in 2012, and some may have occurred as late as April 2014. In other words, Gilmour asks this Court to find that Intertek Defendants waived their anti-assignment rights years before the assignment between VMCS and Patient came into existence.[8] The Court declines to do so. Therefore, Gilmour's waiver argument must fail.

In sum, the Court finds that the Plan's anti-assignment language is enforceable against Gilmour, and Intertek Defendants have not waived their right to rely on the Plan's anti-assignment language. Thus, the assignment of benefits on which Gilmour relies is void. Because the assignment of benefits is void, Gilmour has no standing to sue Intertek

---

[8] Gilmour cites to *Koehler v. Aetna Health Inc.* for the proposition that "courts reviewing a denial of benefits under ERISA are limited to" the actual basis on which the administrator denied the claim, 'not its post-hoc rationalization[s].'" (Dkt. 45 at 19) (quoting 683 F.3d 182, 190 n.18 (5th Cir. 2012)). Gilmour seems to argue that the quoted language in *Koehler* should have some bearing on this Court's analysis regarding the issue of waiver. Gilmour is mistaken. The *Koehler* decision simply does not concern the issue of waiver—indeed, the word waiver is not even mentioned in the opinion.

Defendants on behalf of Patient under ERISA. Consequently, Intertek Defendants are entitled to summary judgment on all of Gilmour's ERISA claims.

## B.   STATE LAW CLAIMS

Gilmour asserts several claims under state law, including negligent misrepresentation, violations of the Texas Insurance Code, and promissory estoppel. The court discusses each claim in turn.

### 1.   Negligent Misrepresentation

Gilmour has alleged and submitted summary judgment evidence that on two separate occasions in 2012, Intertek Defendants negligently misrepresented various facts related to Patient's coverage under the plan and VMCS's right to payment under the Plan. (Dkt. 45-1 at 34). Intertek Defendants argue that summary judgment on this claim is appropriate for two reasons: (1) Gilmour has no evidence that any false information provided by Intertek Defendants was a misstatement of existing fact, which is a necessary element of the negligent misrepresentation cause of action, and (2) the statute of limitations for any such claim passed long ago. Because the statute of limitations may render unnecessary any discussion of the evidence supporting the negligent misrepresentation claim, the Court considers the limitations issue first.

Under Texas law, "negligent misrepresentation claims must be brought not later than two years after the day the cause of action accrues." *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 354–55 (5th Cir. 2008) (internal quotation marks and citation omitted). "[T]he question of when a cause of action accrues is a matter of law for the court to decide, and a cause of action accrues when a wrongful act causes some legal injury, even

if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Id.* at 355 (internal quotation marks and citations omitted). The Supreme Court of Texas has also said that "[a] cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998) (citations omitted).

Here, Gilmour has presented summary judgment evidence that all of the misrepresentations made by Intertek Defendants occurred in 2012, meaning any negligent misrepresentation claim accrued in 2012—some four years before Gilmour filed this suit.[9] As a result, Gilmour's negligent misrepresentation claim is barred by the statute of limitations. Thus, summary judgment in Intertek Defendants' favor is appropriate on this claim.

2.     **Texas Insurance Code**

Gilmour alleges that Intertek Defendants provided VMCS with inaccurate, incomplete and untimely information regarding Patient's benefits under the plan, and did not timely notify VMCS whether they would accept or reject its claim. Based on these allegations, Gilmour argues that Intertek Defendants have violated the following

---

[9] Gilmour argues that "[Intertek] Defendants in their Motion to Dismiss ... accurately stipulated April 16, 2014 as the date that the [statute of limitations] began." (Dkt. 45 at 23–24). Truth be told, Intertek Defendants made no such stipulation. In the Motion to Dismiss Intertek Defendants simply stated: "Even if Plaintiff tries to rely on some sort of limitations tolling principle, the best Plaintiff can hope to achieve is a delay in the running of the statute of limitations on Plaintiff's negligent misrepresentation claim until April 16, 2014." (Dkt. 24 at 26). The Court declines to recognize this language as a "stipulation" as to the date the statute of limitations began.

provisions of Chapters 541 and 542 of the Texas Insurance Code: §§ 541.051, 541.052, 541.056, 541.060, and 542.056. Intertek Defendants argue that Gilmour's claims under the Texas Insurance Code must fail because Chapters 541 and 542 do not apply to self-funded plans, such as the Plan, which is governed by ERISA.

Chapter 541 of the Texas Insurance Code applies to "an individual, a corporation, association, [or] partnership ... engaged in the business of insurance." TEX. INS. CODE ANN. § 541.002(2) (West 2005). Chapter 542 applies only to "insurer[s] authorized to engage in business as an insurance company or to provide insurance in [Texas]." TEX. INS.CODE ANN. § 542.052 (West 2009). "The Texas Supreme Court has held that, although private self-funded employee benefit plans operate like insurers, they are not regulated like insurance companies ...." *Stanissis v. Dyncorp Int'l LLC*, No. 3:14-CV-2736-D, 2015 WL 1931417, at *8 (N.D. Tex. Apr. 29, 2015) (citing *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 848–49 (Tex.2012)). In doing so, the Texas Supreme Court expressly recognized that "ERISA prohibits states from deeming these self-funded plans 'insurance companies or other insurers' or 'to be engaged in the business of insurance' for purposes of state insurance regulation. Simply put, states cannot regulate private self-funded insurance plans." *Texas Dep't of Ins.*, 410 S.W.3d at 849 (alterations and citations omitted).

In their motion for summary judgment, Intertek Defendants provided the authority above as being controlling precedent. Gilmour has not provided any competing authority nor argument that has persuaded the Court otherwise. The Court finds, therefore, that the Texas Supreme Court's clear pronouncement that the "purpose [of the Texas Insurance

Code] does not include self-funded employee health-benefit plans because they are not regulated like insurance companies" is fatal to Gilmour's insurance code claim. *Id.* Consequently, Intertek Defendants are entitled to summary judgment on Gilmour's Texas Insurance Code claim.

### 3.    Promissory Estoppel

Gilmour's First Amended Complaint alleges that Intertek Defendants made the following promises: "that Patient's benefits under the Plan were verified, that the projected medical treatment was deemed medically necessary, that there were no applicable exclusions, that the proposed medical services were precertified, and that Patient's benefits included one hundred percent (100%) of VMCS' usual and customary charges in excess of the Patient's $5,000 out-of-pocket maximum." (Dkt. 21 at 30). Based on these pleaded facts, Intertek Defendants argue that Gilmour failed to allege that they made any "definite" promises to VMCS, and Gilmour's claim is preempted by ERISA. The Court first considers Intertek Defendants' preemption argument.

ERISA Section 502(a) allows an ERISA plan's participants and beneficiaries to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has read ERISA Section 502 to preempt "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement [scheme]." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (citation omitted). To the extent that a health-care provider's promissory estoppel claim depends on and derives from the rights of the plan participants and beneficiaries to recover

benefits under an ERISA plan's terms, the claim is preempted. *See Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 383 (5th Cir. 2011*), opinion reinstated in part on reh'g*, 698 F.3d 229 (5th Cir. 2012); *Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc.*, 164 F.3d 952, 955 (5th Cir. 1999). On the other hand, "ERISA does not preempt a third-party provider's state-law claims based on allegations that the defendants misrepresented that the beneficiary was covered by an ERISA plan when he or she was not." *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. CV H-16-549, 2017 WL 1231026, at *2 (S.D. Tex. Apr. 4, 2017) (citation omitted).

In opposing summary judgment on his promissory estoppel claim, Gilmour again offers Kelly Russell's affidavit, which sets forth a sworn account of Intertek Defendants' promises. Specifically, Russell testifies that Intertek Defendants' made the following promises:

    a.    Patient's benefits **under the Plan** were verified;

    b.    VMCS's projected medical treatment was deemed medically necessary **[under the Plan]**;

    c.    There were no applicable exclusions **under the Plan**;

    d.    VMCS's proposed medical services were pre-certified **[under the Plan]**; and

    e.    the Patient's benefits **under the Plan** specifically included 100% of VMCS's usual and customary charges in excess of the patient's $5,000 out-of-pocket maximum (hereinafter, "VMCS's usual and customary charges").

      f.     VMCS would be compensated for VMCS's usual and customary charges [**under the Plan**] when it submitted its claim for payment to the Defendants.

(Dkt. 45-1 at 35) (emphasis added).

Paragraphs "a" through "e" all discuss "promises" related to Patient's right to recover benefits under the Plan. Paragraphs "a," "c," and "e" explicitly do so by discussing the alleged promises as being made "under the Plan." Moreover, although paragraph's "b" and "d" do not explicitly include the phrase "under the Plan," these paragraphs clearly discuss matters that are determined "under the Plan"—i.e., whether a treatment is considered medically necessary and whether a proposed treatment had been pre-certified, both under the Plan. In addition, Paragraph "e" expressly states that "**the Patient's benefits under the Plan specifically included** 100% of VMCS's usual and customary charges in excess of the patient's $5,000 out-of-pocket maximum ...." *Id.* (emphasis added). Importantly, Russell defines the entirety of paragraph "e" as "VMCS's usual and customary charges." *Id.* This is important because although paragraph "f" does not expressly invoke Patient's benefits under the Plan, it does rely upon the term Russell defined in paragraph "e": "VMCS's usual and customary charges." *Id.* By doing this, Russell makes clear that all of the "promises" that Intertek Defendants purportedly made lead directly back to the Patient's benefits under the Plan. In other words, Gilmour's allegation is that Intertek Defendants promised VMCS that Patient and his procedure were covered under an ERISA health-benefit plan and that VMCS would be paid in accordance with that plan.

Contrary to Gilmour's arguments, the Court finds that his promissory estoppel claim "is dependent on, and derived from the rights of [Patient] to recover benefits under the terms of the [P]lan." *Access Mediquip L.L.C.*, 662 F.3d at 383. Consequently, Gilmour's promissory estoppel claim is preempted by ERISA. *See Houston Metro & Spine Surgery Ctr.,LLC v. Health Care Serv. Corp.*, No. CV H-16-1402, 2017 WL 1231072, at *3 (S.D. Tex. Apr. 4, 2017) (holding Plaintiff's "promissory-estoppel claim is preempted for the ERISA claims" because the alleged misrepresentation was "dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan") (citation and quotation marks omitted).

## V. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Intertek Defendants' Motion for Summary Judgment (Dkt.43) be GRANTED and Intertek Defendants' Motion to Strike (Dkt. 46) be DENIED as moot.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 30th day of May, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE